Good morning. May it please the Court. I'm George Kaplan. I represent appellants in this matter. This is an interesting case to me. It raises two constitutional issues. The first I'm not going to deal with for very long at the outset here, which is the punitive damage issue. The Court recognized that it should conduct a financial net worth hearing and did not. It's as simple as that. In my view, on that matter alone, the case does need to be remanded for further proceedings. I want to focus on the jury trial issue because this case is different than the implied waiver cases that are generally being cited in this case. It's completely different, actually. And I want to make sure that we have, analytically, the distinction in mind. This is not a case of an implied waiver. This is a case where the party who demanded a jury did it properly in the first instance. That demand was then incorporated in the final trial status report. The plaintiff waived the jury. The defendant did not. And it's embodied in that report. The Court then issued a final trial status order. And the jury trial demand is embodied in that order. And the Court orders it for jury trial. The defendants then file late jury instructions. Two days late. That is not — in the other cases being cited, jury instructions weren't filed. The other side then makes a motion to strike the jury instructions. The motion is — Strike the trial. Strike the jury instructions that were proffered and to strike the jury trial demand on grounds that the local procedural rules were not followed. At that point, the instructions were filed the weekend before Memorial Day, as I recall. The motion to strike was made the next day. I think the actual instructions were filed on a Thursday. Motion to strike and object and strike was made on a Friday. The Court — the return date on the motion was the first day of trial, which was June 5th. The Court on Wednesday following Memorial Day, sua sponte, ruled and granted the motion. Nothing filed to challenge the motion? Nothing was filed, but the papers wouldn't have been due ordinarily until after — until sometime after the Court had already ruled. The Court ruled sua sponte. Was there ever a motion for reconsideration filed? No, but what difference does it make? Well, because under our decision in white, we say a party's vigorous participation in a bench trial, without so much a mention of a jury, cannot be presumed the result of mere inadvertence, but is a knowledgeable relinquishment. So why — of the prior demand? So once the ruling happened and your client then participated in the jury — in the bench trial, why doesn't white govern? It doesn't govern because in white, there was no submission of jury instructions. There was no motion that was lost. Well, if it was lost — when you mean lost, what do you mean? In other words, the defendants filed jury instructions late. A motion by the other side to strike the instructions, to object and strike the instructions. The Court then rules on the motion by granting the motion, striking the instructions, and takes the position that the jury trial is deemed waived. It's been ruled on. Why is it necessary? The error is that the local rule relating to time violates the jury trial demand in the first place under Rule 38 and the requirements that the only way to waive the jury trial once demanded is by agreement of the parties in Rule 39. I trust that you weren't counsel. You trust correctly. And I trust that because you weren't counsel, if you had been counsel, you certainly would have protested, filed a motion for reconsideration, filed an objection to the motion to strike, and objected all the way, even to the first day of the trial, and then would not have participated without the Court coming down on the top of your head saying, don't care whether you like it or not, you're going to trial. Now that's why I'm worried about your first idea that there's no waiver. There's no waiver. Respond to that. There is no waiver when you've lost a motion. You did, it was litigated in front of this Court. The fact that the Court knew you had demanded a jury trial, the matter was actually a jury trial. But the Court thought it was enforcing the timeliness rule. In Solis. You are now arguing that the timeliness rule violates the civil, Federal civil rules, or whatever the argument, or your constitutional right, or whatever your argument, was never called to the attention of the district court. What do you mean? I mean, when you say that it wasn't called to the attention of the district court, the district court in Solis, this Court holds that we hold that both the district court's reasons in the Solis case for denying the jury trial were faulty. Solis clearly demanded a jury trial, never withdrew that demand, and the district court's imposition of a penalty of forfeiture of that right for failing to comply with the procedural pretrial requirement was invalid. So it's as simple as that. I mean, once it's been litigated. I understand your argument on that. Okay. I think that once the matter was actually litigated, I understand what I would have done, or what some other lawyer would have done, might have been different. The question is, the question is actually having this issue actually adjudicated before the trial occurred, and the party who proffered the jury instructions demanded the jury trial. Having lost that motion, it seems to me that it is clearly preserved for appeal, and it has been raised in an appropriate way. It wasn't as if the lawyer for the defendant said, gee, I acquiesce, you were correct. I mean, from his point of view, the court sua sponte intervened. We'll review the record. Okay. And my comment about this is the following. Counsel, have you got other arguments on other issues? Because I think we understand your view on this issue. If this is your make-point issue, then I say stay with it. But if you've got other good ones. Let me make the other points quickly. The other issue, of course, was if I'm correct, would it have been harmless error? What is it? Well, would the denial of a jury trial be harmless error? And in this case, what we demonstrated, I think, and I just want to be clear about this, Robert Bain personally, there isn't one shred of evidence that Robert Bain personally sold consigned original paintings and took the money for his own benefit. Nowhere in the record is that point demonstrated. Could a reasonable jury have found that Robert Bain did not, therefore, commit conversion? Yes is the answer. The damages that were assessed, $388,000 for conversion, nowhere supported in this record. In fact, the parties agreed in a written document that the debt owed, that the remaining debt owed for the sale of the consigned paintings was about $144,000. Later on, Bain offered back prints, and a credit was given to that amount. And that was followed by actual 44 payments on that debt. It seems there are two points to be made. First of all, if the parties agree on the value of the paintings, that should be binding. They did. They had a contract. The amount of the debt that remained, and all was said and done after the credits, and by the way, they took it back as a credit, 840 prints at an average price of only $40. The notion that they were worth $300 apiece, or were represented as such, doesn't square with what actually happened here. But more importantly, the debt that remained was $92,000 or $3,000. There is no evidence in the record to sustain the $388,000 value that the judge ascribed. And if you move on to the issue of tortious interference with prospective economic relations or opportunities, there is no independent wrongful act that's cited by the court in its findings, other than the fact that pieces were sold at auction at an average price of about. I'm talking about eBay. But the company which contractually owned these prints, in other words, under that contract, the company published these prints, created the prints, paid for them before they were sold. The company in fact owned these prints and had a right to sell them, and under the contract had a right to sell them at a price that it felt was appropriate. There was nothing wrong with that. And the other piece that doesn't match on that side of the case is that the eBay sales didn't occur until October of 2004. Yet the court finds damage in 2002, in 2003, and frankly, the first nine or ten months of 2004. It doesn't square up. It makes no sense. Could a reasonable jury have found otherwise, of course. Let me ask you this. Are you arguing that this shows harm, that the denial of the jury trial was not harmless error, or are you arguing that the judge was clearly erroneous? I'm arguing both. I'm arguing both points because I have to demonstrate that it was not harmless, that this was a very harmful error in not granting a jury trial. In fact, what is the standard for the district court to have found that there was an intentional interference? The standard for the court. I mean, when you have a court trial, it's a little bit difficult. With a jury trial, it's a lot easier for you on appeal to say, well, there's evidence outside what the jury got. But now we have a court trial, and it seems to me that the standard of review for a court trial on intentional interference is clearly erroneous. In other words, absolutely no facts in the evidence to sustain what the court did. Well, let's do it two different. There are two different issues in the intentional interference. One is whether the calculation of damage is clearly erroneous, and I've just argued that it was clearly erroneous. The second point, though, is in order to interfere with future economic benefit, the wrong has to be an independent wrong. It must be. And the reason you're saying there's no evidence in this record. None. None. It's in the fact that the sale, there could be argued that the sale was not prescribed by the contract. The sale was prescribed by the contract because, let's understand the contract. Bain Limited was the contracting party. It owned these prints, period. It had the right to sell these prints, and it had the right to sell them at any price it chose. It went on a public auction site to sell prints. It sold, you know, let's be clear about this, 105 prints over three years for $14,000. That's what happened. And my point is that is not an independent wrong. You have to have an independent wrong to have tortious interference with a future economic possibility because you're not interfering directly with a contract. It's very different than tortious interference with a contract. You have used your time. Thanks. Thank you very much. Thank you. I am Paul Loren. I represent Hajime Soriyama. I think I will start with the most recent sequence of argument, because it really fails to grasp the factual evidentiary history in the case. The intentional interference damages, for one thing, and the notion that there is some sort of lack of logical link and sequence, faces a couple hurdles. I mean, the first hurdle is the level of review, as Judge Smith has noted, that this Court brings to that inquiry. The second is actually a grasp and understanding of what happened below. When my opponent indicates that there was discovery of certain transactions in 2004, that is exactly true. Certain transactions in 2004 were discovered. Also discovered. Those transactions were the eBay sales? Yes, the eBay sales. When did they take place? Well, see, that's a completely distinct issue. And what we know is that they took place in 2004 and thereafter. Prior to that, we also know, based on a discovery that occurred at the final pretrial setting conference in May of 2007, so another surprise discovery, that many of the paintings, virtually all of the paintings, 33 paintings, had in fact been sold by Robert Bain. And those sales of particular note, not simply because they were not disclosed and therefore would be a fundamental breach under California law of the fiduciary duty imposed upon consignment art sellers, and also, I think, a breach of the situational fiduciary duty that existed here between a publisher as an agent cultivating and creating a market for an artist's works. But those sales, separate and apart from simply being sales out of trust, also reflect that as early as 2001, these paintings were being sold or given away together with reproductions. So we know that prior to 2004, there was this generalized conduct of undercutting the market in effect. So to the extent that the trial court below focused on this particular context or sequence of events that had been discovered in eBay, that does not limit this court in its ability to look at the totality of the record, which the trial court had before her, and see that, in fact, this pattern had emerged as early as 2001. And even there are some instances before that. And that is all in the record in the form of the invoices that were late produced by counsel at the time of the final trial, pretrial conference. That's significant. And I think it's significant thematically in terms of the broad strokes that this court should bring to its inquiry, which is much of the argument on the other side can be reduced to a criticism that this pervasive pattern, this continuity of deceit that stretched many, many years, and indeed I would argue stretches to this day in the conduct of the litigation and what Suriyama has been put through, that this pattern has not been sufficiently constrained within discrete theories. Well, the fact of the matter is these compounding torts, which began in the late 90s, which Judge Cooper characterized as a continuing fraud upon Suriyama, reflect a kind of enterprise fraud that goes beyond just merely these particular claims. And indeed, there are overlapping theories that address the misconduct. For example, breach of fiduciary duty and conversion. I think that when the court focuses on the record, it will see that the pervasiveness, the continuity, the systematic deception, and ultimately the manipulation, and I would say gamesmanship of the process, supports the findings of the claims. Now, at what point in they reached an agreement and gave Bain a certain credit on the amount that was owed, at what point in time did that occur? In terms of the calendar, I believe it occurred roughly in 2002. In terms of thematically what was occurring at that time, we had already seen a vast number, indeed the majority of original paintings and giveaway of lithographs as reflected in the invoices that were only produced in 2007, had occurred at that point. We knew that. That was before the district court. Your client didn't know that in 2007. Correct. We didn't know. And, in fact, the core, if you will, the grothamon of what occurred here was not known to us until May 2007. That was the surprise here. And thematically, again, I would say this ties into the other issues. What you're really trying to talk to us about, it seems to me, is can you meet the elements of the damages as well as the elements of the tort of the intentional interference with prospective economic advantage and or the tort of conversion, correct? Correct. And what we're really looking at is there evidence there which can meet each one of these elements. So what is the independent wrongful act? Right. Absolutely. I think that that's exactly right. We're talking about claims. But what is the independent? There are a number of them. You get graded on answers. We don't get graded on questions. Fair enough. That's okay. I'm sorry for being sort of low-shooting. Well, I was glad to get your compliments, but the honest truth is what do you suggest is the independent act? Well, these are the ones that were enumerated by the trial court. First, that there was a deceit. There was a deceit upon the market in the advertisements that occurred on eBay. Robert Bain Limited characterized itself as the exclusive publisher for Soriyama Art. At the time that he was doing that, he was not the exclusive publisher. Now, that's wrongful. It's wrongful vis-à-vis the market. Are you talking about the difference between the United States market and the international market, or what are you talking about? I'm not talking about either. The geographical limitation is irrelevant for purposes of the point that I'm making. What I'm saying is something more fundamental, a kind of fraud on the market saying, I'm the exclusive publisher, and I'll give you a deal here. And the deal is terribly destructive and undermining to the market. So not only does he deceive the marketplace, does he deceive the buyers, but he breaches his duty of loyalty to his principal in this instance, Soriyama. So that deceit and that breach of a transcendent duty, I would say, of a publisher and one who creates and manages the market is an independent wrong. In addition to that, it comes in the context of having negotiated under false and deceitful pretext a deal whereby Soriyama agreed to take back some of the reproductions. At values stated in the written communication by Mr. Bain, and there's no doubt here that he wrote that e-mail. There's no question about his personal signature on that act. And that happened? And that happened in the run-up here to the 2002. Right. So that's when that was going on. So these are the wrongs that occurred there. Now, let me take a step back and also frame the fact that if we look at it from the standpoint of the totality of the evidence in the record that can support this determination, and we go all the way back to 99, we begin to see that these cut rate sales were occurring as early as 99 and really took off in 2001. So when viewed from that standpoint and looking at that as the predicate for the cause of action for the claim, then we begin to see, well, the independent wrong also extends to those prior acts, even though the trial court did not articulate that. What's your understanding of what the nature of the contractual agreement between the two was? Yeah. Well, it was a, I can speak to it factually, but I think it's probably more helpful for me to speak to what I think the effect of it was legally. I think it created a fiduciary duty. Well, factually what was it? It was called an exclusive publishing agreement. Well, when he says he's the exclusive publisher, what's the wrong? Well, because the agreement had terminated at that point in time. At the time that he was representing that on eBay, he no longer was the exclusive publisher. In fact, Soriyama had no publisher. The agreement had ended because the relationship had deteriorated at that point. It had been discovered that originals had been sold, and it had been discovered that there were significant problems and monies owed. Well, their argument is that you're, on the damage side of things, you're getting double recovery, that there was an award of damages on a contract breach theory, but there's also awarded damages for conversion. Right. Well, the contract award conversion applied to Robert Bain Limited, a completely different party than the contract claim. Contract claim was against Robert Bain Limited. So Robert Bain individually is the judgment debtor, if you will, as to conversion. Okay? Robert Bain Limited is the judgment debtor as to the breach of contract. So those are distinct parties, distinct claims against distinct parties. So there really isn't. These are distinct. That may be different. That may be true. But the damage to your client, what's the distinction in the monetary damage? He doesn't get damages from two different parties for the same art. No, I think the fundamental rule of no duplicate damage is applied. Right. Exactly. So why isn't that the case here? Because I think that you have conceptually distinct rights and remedies, so to speak. So I think to the extent this is – let me get to the point. I'm sorry about that. The contract defined a certain sequence of transactions. The sale of artwork, 33 pieces. Right. The claim of conversion or intentional interference with prospective economic advantage goes beyond that. Conversion does relate to the same items, but as to a different party. Well, that may be true, but you don't get damage twice. It's either converted or breached, but you don't get damages. I think that that's a fair statement. And to the extent that we were to get paid on the contract claim, we would be pleased to stipulate that that would apply to the conversion claim. Right. If I could, I don't have much time. Are you talking about credit? A credit, yes. If you could, I would love you to address the punitive damages question. Yes. I would also like – I think that's a big problem because it seems to me that the court said they'd have a hearing. They didn't. I don't know that reading what the court did, whether I can really suggest that the evidence of the net worth is there for the court to do what it has to do. Sure. I know you argue that it should. They tied it to wrongfully gained profits. I don't see how the court even tied its ruling to wrongfully gained profits. I think it was just done for egregious conduct, which is not the standard. Right. And I understand the court's comment. If I could, I'm going to look to the court for direction because there's the jury issue also. And I know the significance of that. I'd like to address that, but I want to answer your question, too. Let's do both. Okay. In terms of the punitive damage award, I certainly would have liked to see the court go into the record and underscore what was there and what was there included a quantum of sales of 4.5 million in limited editions over time. In addition to that, she was aware of other damages that we had put evidence on that she did not award. So these were losses that had been incurred for five to six years. That being said, there was no evidence of net worth. We had anticipated a bifurcated process. It did not happen. I believe that one could reasonably, if one looks at the California authority as saying that net worth evidence is not absolutely strictly required, one can look to the measure of loss, then I think that it is possible to get to a number, perhaps not to the million-dollar number. Under those circumstances, we have stated, and I'll say it again, that on an appropriately crafted remand, we believe that we can fully justify the million-dollar award. So that's — That's a quick end to that. Yes. On the issue of jury trial, I think that, you know, we can look at individual facts and conduct and distinguish and contrast them forever. The point is, what does the conduct mean? It's important to note that the Solis decision, that is the fulcrum upon which this jury trial argument turns, and it's a particularly notable case because it addresses the local rule of the Central District Court, was only handed down after the time of our trial. It's a 2008 decision. In 2007, what the lawyer, Mr. Washer, representing Mr. Bain, should have been familiar with, was the White decision. And what clearly is the rule of this circuit is that conduct can be deemed an implied waiver. Now, I think that there's two subcategories to that. Be very quick. Sure. And one is that the conduct is, in essence, going to be implied without any inquiry into whether there was a knowing involuntary waiver. And I think in this instance, where there was not a continuing objection, that occurred. Secondarily, the Court can look at the evidence and infer actual consent. I think that the record is sufficient to infer actual consent separate apart from applying it. All right. Thank you. Thank you.
judges: Schroeder, Fisher, Smith N. R.